# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 21-01904-jw |
| Charlton Scott Moore | Chapter 13 |
| Debtor. | **ORDER OVERRULING OBJECTION** |

This matter comes before the Court on the Objection to Chapter 13 Plan and Related Motions filed by Kay Santiago ("Santiago") on August 23, 2021. In the Objection, Santiago asserts that confirmation should be denied because the chapter 13 debtor, Charlton Scott Moore ("Debtor"), did not file this bankruptcy case in good faith and did not propose his plan in good faith because he does not propose to commit all of his projected monthly disposable income to make plan payments. At the hearing on the Objection, Debtor disputed Santiago's claims that the case and plan were not filed in in good faith and asserted that the Objection was untimely. The Chapter 13 Trustee does not object to confirmation and submitted a memorandum of authority to assist the Court in addressing the issues raised. After considering the pleadings in the matter, the memorandum of authority presented by the Trustee, and the arguments made by the parties at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to contested matters by Fed. R. Bankr. P. 7052 and 9014(c).

## FINDINGS OF FACT

1.  Debtor was formerly married to Santiago's daughter. During the marriage, Santiago loaned money to Debtor and her daughter to help them afford private school education for their children. Santiago is elderly and claims to suffer from health issues.

2.	On April 11, 2017, the family court entered a Final Divorce Decree, which ordered Debtor to repay Santiago the sum of $54,922.70 by making payments of $200/month for 2.5 years and then making a lump sum payment of the balance.

3.	Over 4.5 years, Debtor has paid Santiago $6,130, and owes a balance of $48,792.70, that became due on November 1, 2019.

4.	On February 4, 2020, Santiago's family court attorney filed a Contempt Complaint. Due to the Covid-19 pandemic, the hearing originally set for March 30, 2020 was continued to July 26, 2021.

5.	On July 22, 2021, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. With the petition, Debtor also filed his bankruptcy schedules, which listed an unsecured debt owed to Santiago in the amount of $48,792.70, and his chapter 13 plan. The schedules reflect that Debtor's projected monthly disposable income is $2,663.49 and that Debtor is an above-median debtor. Debtor's chapter 13 plan proposes to pay 100% of all unsecured claims by making payments of $1,149 per month over a period of 60 months. The plan provides that objections are due no later than 21 days after service of the plan. The certificate of service filed with the plan provides that the plan was served on "the Trustee via CM/ECF and creditors attached hereto and incorporated herein by reference via first class mail, postage prepaid on July 22, 2021. No list of creditors is attached although Debtor's counsel indicated that all creditors were served with the plan.

6.	On August 23, 2021, Santiago filed an objection to the plan.

7.	On August 25, 2021, Santiago filed a timely proof of claim, asserting an unsecured claim in the amount of $48,792.70.

## CONCLUSIONS OF LAW

**I.     Was Debtor's Petition Filed in Good Faith Under 11 U.S.C. § 1325(a)(7)?**

Santiago asserts that the plan should not be confirmed because the bankruptcy case was not filed in good faith. Section 1325(a)(7) of the Bankruptcy Code requires Debtor to prove that the action of the debtor in filing the petition was in good faith to meet the requirements for confirmation. While Debtor bears the ultimate burden of demonstrating that the plan meets the requirements for confirmation under § 1325(a), "it is generally accepted that a party objecting to confirmation bears the burden of proof" of going forward with evidence as to its objection. *In re Krueger,* 457 B.R. 465, 475 (Bankr. D.S.C. 2011) (quoting *Matter of Shortridge,* No. 93-2558, 1995 WL 518870, at *2 (6th Cir. 1995)). Accordingly, there is a shifting burden of proof, and Santiago bears the initial burden of establishing a prima facie objection on the grounds of debtor's lack of good faith in filing the petition under § 1325(a)(7). *In re Pizzo,* No. 20-01758, 2021 WL 2020297 (Bankr. D.S.C. May 20, 2021). If Santiago meets this burden, then Debtor bears the ultimate burden to prove that the plan complies with the requirements for confirmation. *See In re Barnes,* 378 B.R. 774, 777 (Bankr. D.S.C. 2007); *In re Williams,* C/A No. 97-08824-W, slip op. 1998 WL 2016786 (Bankr. D.S.C. Jan. 13, 1998) (noting that a debtor bears the ultimate burden of proof for confirmation of a chapter 13 plan).

Santiago contends that Debtor's lack of good faith is shown by his filing for bankruptcy relief just days before a family court contempt hearing and his using this bankruptcy case to stretch out his payments on a debt that should have been paid in full in 2019. The Court considers the totality of the circumstances when determining whether a petition was filed in good faith under 11 U.S.C. § 1325(a)(7).[1]  *See In re Bateman*, 515 F.3d 272, 283 (4th Cir. 2008) (stating that in

---

[1] Further references to the Bankruptcy Code will be by section number only.

analyzing § 1325(a)(7), "the proper good faith inquiry is 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan.'") The Court considers a number of factors when making a good faith determination, including "the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor." *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir. 1982). Debtor's conduct in filing his bankruptcy petition on the eve of the family court contempt hearing is only one circumstance that the Court would consider in determining whether the case was filed in bad faith, and the Court does not find it dispositive of the issue of good faith in this case. *See In re Ford,* 522 B.R. 829, 837 (Bankr. D.S.C. 2014) (finding that debtor's filing of multiple bankruptcy cases on the eve of foreclosure sales did not suffice as evidence of bad faith where debtor had demonstrated in each case an intent to reorganize by filing complete schedules and confirmable plans). Many debtors file bankruptcy cases for the purpose of staying actions in state court, including family court actions to manage the repayment of domestic related debts through bankruptcy. *See Tydings v. Tydings (In re Tydings),* C/A No. 18-04579-jw, Adv. Pro. No. 18-80072-jw, slip op. at *7 (Bankr. D.S.C. Nov. 2, 2018) (noting that it is commonplace for debtors to treat their obligations from a divorce decree in a chapter 13 plan and that the Bankruptcy Code provides a statutory automatic stay, "which freezes most judicial proceedings, including state court proceedings, in order to provide a debtor with a breathing spell, and, in chapter 13 cases, provides an opportunity to propose a structured reorganization plan to repay creditors.") In this case, Debtor is not trying to use bankruptcy to avoid payment of the debt he admits he owes to Santiago, but instead is seeking to find a way to

4

pay back this substantial debt in full over time. The Bankruptcy Code's provisions contemplate and provide for such relief, allowing debtors an opportunity to pay their debts over a period of time. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* [1978] U.S. Code Cong. & Ad. News 5963, 6079. ("The purpose of Chapter 13 is to enable an individual, under court supervision, and protection, to develop and perform under a plan for the repayment of his debts over an extended period.") Even a Chapter 13 debtor who is ineligible for a discharge "may file a Chapter 13 case and utilize the tools in chapter 13 to cure a mortgage, deal with other secured debts, or simply pay debts under a plan with the protection of the automatic stay." *In re Bateman,* 515 F.3d 272, 283 (4th Cir. 2008) (finding that a debtor who was ineligible for discharge had nevertheless filed his Chapter 13 petition in good faith where his plan proposed to fully pay all allowed claims). "In many Chapter 13 cases, it is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.'" *Id.* Debtor has proposed to pay all of his general unsecured creditors in full over the course of his bankruptcy case, which is a strong indication of his good faith. While Santiago alleged in her objection that Debtor had failed to disclose assets and income in his schedules, no convincing evidence to support this argument was presented. Accordingly, after consideration of the *Deans* factors, the Court finds that Debtor's Chapter 13 filing was in good faith.

**II.    Is the Debtor Required to Submit All of His Projected Disposable Income to the Plan in this Case?**

Santiago has also objected to confirmation on the grounds that Debtor's plan does not meet the requirements of § 1325(b)(1), because he does not propose to commit all of his projected monthly disposable income to make plan payments, and therefore the plan is not proposed in good faith. Santiago bears the initial burden of proof to establish that Debtor's plan does not satisfy

5

§ 1325(b)(1). If Santiago can meet this burden, then the burden shifts to Debtor "to prove by a preponderance of the evidence that the plan complies with the confirmation requirements, including the good faith requirement." *In re Pizzo,* No. CV 20-01758-HB, 2021 WL 2020297, at *3–4 (citing *In re Bridges,* 326 B.R. 345, 349 (Bankr. D.S.C. 2005).

Debtor has proposed a plan which provides for payment in full of allowed unsecured claims over a period of 60 months. Debtor's proposed plan payment is approximately $1500 less than his projected monthly disposable income. Santiago argues that Debtor has sufficient projected monthly disposable income to pay her claim in full over a shorter period of time. She asserts that the Bankruptcy Code requires Debtor to submit **all** of his disposable income into the plan, regardless of the commitment period and regardless of his proposed payment in full to allowed unsecured claims. This case presents an issue of first impression in this district: does the Bankruptcy Code require an above-median debtor to devote all of his projected disposable income when the plan provides for payment in full to general unsecured creditors? For the reasons set forth below, the Court concludes that it does not.

Resolution of this issue centers on the interpretation of § 1325(b)(1), which provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> 
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The majority of opinions addressing this issue have held that an above-median debtor may devote less than the debtor's full amount of projected disposable income to a plan if the plan pays

6

allowed unsecured creditors in full under § 1325(b)(1)(A) within sixty months. *See In re Eubanks*, 581 B.R. 583, 589 (Bankr. S.D. Ill. 2018) (permitting a chapter 13 debtor to confirm a 100% plan while not devoting all disposable income to the plan); *In re Gillen*, 568 B.R. 74, 79 (Bankr. C.D. Ill. 2017) (same); *In re Edward*, 560 B.R. 797, 800 (Bankr. W.D. Wash. 2016) (same); *In re McCarthy*, 554 B.R. 388, 392 (Bankr. W.D. Tex. 2016) (same); *In re McGehan*, 495 B.R. 37, 44 (Bankr. D. Colo. 2013) (same); *In re Cobb*, 485 B.R. 264, 266 (Bankr. D.R.I. 2013) (finding there is no *per se* rule that a proposed plan is not filed in good faith when the plan provides for full payment to unsecured creditors, but does not devote all of the debtor's disposable income to payments under the plan); *In re Richall*, 470 B.R. 245, 250 (Bankr. D.N.H. 2012) ("The Court does not have the authority to require above median debtors to reduce their plan term from five years, if they are paying all unsecured claims in full."); *In re Winn*, 469 B.R. 628, 630 (Bankr. W.D.N.C. 2012) (permitting confirmation of a modified plan that pays unsecured creditors in full without devoting all of the debtor's disposable income); *In re Jones*, 374 B.R. 469, 469 (Bankr. D.N.H. 2007) (overruling a Trustee's objection to confirmation when the proposed plan paid unsecured creditors in full but dedicated less than all of the debtor's disposable income); *In re Sampson-Pack*, C/A No. 12-30589-NVA, 2014 WL 1320371 (Bankr. D. Md. Mar. 31, 2014) (noting that a debtor that pays the full amount of the claim is not required to dedicate all projected disposable income to a plan); *In re Bailey*, C/A No. 13-60782, 2013 WL 6145819, at *6 (Bankr. E.D. Ky. Nov. 21, 2013) (holding that the disposable income test under § 1325(b)(1)(B) does not apply when the plan satisfies the payment-in-full clause of § 1325(b)(1)(A)); *In re Ellis*, C/A No. 12-51637-JPS, 2012 WL 5865906, at *2 (Bankr. M.D. Ga. Nov. 16, 2012) ("[A] plan satisfies section 1325(b) if unsecured claims will be paid in full even if the claims could be paid in a shorter period of time if all monthly disposable income was contributed to plan payments."); *In re*

7

*Johnson*, C/A No. 10-03184C, 2011 WL 1671536 (Bankr. N.D. Iowa May 3, 2011) (finding the Trustee's argument that a debtor must comply with subsection (B) of § 1325(b)(1) when the debtor has complied with subsection (A) of that section to be without basis).

Judge Whitley of the U.S. Bankruptcy Court of the Western District of North Carolina concisely stated the reasoning for such holdings in *In re Winn*:

> Only one of the prongs [of § 1325(b)(1)] needs to be met, not both.
>
> The either/or structure of the statute appears to supply the answer in this case. The [debtors'] proposed modification will pay all allowed claims in full; thus, it meets the Section 1325(b)(1)(A) confirmation requirement. While the modified plan does not propose to pay all of the [debtors'] projected disposable income to the plan and fails to meet Section 1325(b)(1)(B), this criterion need not be met.

469 B.R. at 630-31.

In her Objection, Santiago omits § 1325(b)(1)(A) from her discussion and analysis as if it were inapplicable to the matter under consideration. The Court finds that § 1325(b)(1)(A) is not only applicable, it is controlling in this case. Since Debtor has proposed a plan that provides for payment in full to allowed unsecured creditors, including Santiago's claim, the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim, and the requirements of § 1325(b)(1)(A) are satisfied. Since the statute is written in the disjunctive, Debtor does not also have to also satisfy the requirements of § 1325(b)(1)(B) by providing for payment of all of his projected disposable income over the duration of the plan. *See Eubanks,* 581 B.R. at 585. The lone opinion cited by Santiago to support her contention that a debtor must devote the full amount of disposable income to the plan when paying general unsecured creditors in full, *In re Ross*, 375 B.R. 437 (Bankr. N.D. Ill. 2007), was later reconsidered by the U.S. Bankruptcy Court for the Northern District of Illinois, where it subsequently held that the subject plan was, in fact, confirmable under § 1325(b)(1)(A) as the debtor had proposed to pay

all unsecured creditors in full (rather than devoting all disposable income to the plan under § 1325(b)(1)(B)). *See In re Ross*, 377 B.R. 599 (Bankr. N.D. Ill. 2007).

After considering the case law and the language of § 1325(b)(1), the Court agrees with the majority approach and concludes that only one of the prongs of § 1325(b)(1) must be met, not both. Because Debtor has proposed to pay unsecured creditors in full over 60 months, satisfying the requirements of § 1325(b)(1)(A), he does not have to commit all of his projected disposable income to plan payments for the duration of the plan. Accordingly, the Court finds that Santiago has not met her burden of proof of demonstrating that Debtor's plan does not meet the requirements of § 1325(b)(1) and her objection to confirmation on this ground is overruled.

### III. Are There Additional Requirements or Conditions to Confirming a Chapter 13 Plan under Such Circumstances?

Courts vary as to whether it is appropriate to place any additional conditions, such as the payment of interest, on confirmation of a plan that provides for payment-in-full to unsecured creditors but does not devote all of the debtor's projected disposable income to the plan. Some courts find that no additional conditions or requirements, such as the payment of interest, are necessary to satisfy § 1325(b)(1)(A) under such circumstances. *See In re Eubanks*, 581 B.R. 583 (Bankr. S.D. Ill. 2018) (finding debtor's proposed plan was filed in good faith when debtor proposed to pay unsecured creditors in full without devoting all of the debtor's disposable income over the term of the plan, and that the plan was confirmable without the necessity of interest being paid to unsecured creditors); *In re Gillen*, 568 B.R. 74 (Bankr. C.D. Ill. 2017) (same); *In re Edward*, 560 B.R. 797 (Bankr. W.D. Wash. 2016) (same); *McGehan*, 495 B.R. at 45 (overruling the Trustee's objection that "the effect of confirmation would be to grant the Debtors an interest free loan for five years"); *In re Ross*, 377 B.R. 599 (Bankr. N.D. Ill. 2007) (upholding on

reconsideration the court's decision to overrule the Trustee's objection to confirmation on the basis that the debtor was not paying interest to unsecured creditors).[2]

Other courts have imposed additional requirements or conditions to confirm a plan under such circumstances. One court, using its authority under § 105(a), conditioned confirmation on the requirement that the debtor may not receive a discharge unless the debtor actually pays all creditors in full (therefore, limiting the ability of the debtor to propose a post-confirmation modified plan that pay less than 100% to general unsecured creditors). *See In re McCarthy*, 554 B.R. 388, 394 (Bankr. W.D. Tex. 2016).

Some courts find that interest is required to be paid to general unsecured creditors under § 1325(b)(1) when a debtor does not propose to contribute all disposable income to their plan in order to compensate them for the delay in repayment. *In re Hight-Goodspeed*, 486 B.R. 462 (Bankr. N.D. Ind. 2012);[3] *see also In re Barnes*, 528 B.R. 501 (Bankr. S.D. Ga. 2015); *In re McKenzie*, 516 B.R. 661 (Bankr. M.D. Ga. 2014); *In re Cheatham*, C/A No. 9:17-bk-01169-FMD, 2017 WL 5614910 (Bankr. M.D. Fla. Nov. 20, 2017); *In re Sampson-Pack*, C/A No. 12-30589-NVA, 2014 WL 1320371 (Bankr. D. Md. Mar. 31, 2014); Keith M. Lundin, LUNDIN ON CHAPTER 13, § 91.7, at ¶ 6-7, LundinOnChapter13.com (last visited October 26, 2021)

Ultimately, resolution of this issue is a matter of statutory interpretation. Courts have disagreed as to whether the phrase, "as of the effective date of the plan" in § 1325(b)(1) requires the payment of interest. As used in other subsections of § 1325,[4] the phrase "value, as of the

---

[2] These courts generally find that the language of § 1325(b)(1) does not require the payment of interest to general unsecured creditor, which is discussed more fully herein on page 5.
[3] Within the opinions requiring the payment of interest, there is a split as to what interest rate must be applied to the general unsecured creditors under § 1325(b)(1). *See In re Matthews*, 623 B.R. 818, 820 (Bankr. S.D. Ga. 2020) ("The courts requiring interest have considered different rates including: interest calculated pursuant to the formulate set out in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004) and the federal judgment interest rate under 28 U.S.C. § 1961.").
[4] *See* § 1325(a)(4) (providing that the court shall confirm a plan if "the value, as of the effective date of the plan, of property to be distributed on account of each allowed unsecured claim is not less than the amount that would

effective date of the plan" has been uniformly interpreted as requiring the payment of "present value," which includes interest. *See In re Eubanks,* 581 B.R. at 591 (citing *In re Gillen,* 568 B.R. at 78-79). In §§ 1325(a)(4) and 1325(a)(5)(B)(ii), the phrase follows the word "value" and clearly modifies that word, thus requiring the payment of interest. Unlike those sections, in § 1325(b)(1), the phrase "as of the effective date of the plan" precedes the word "value" and follows the phrase "the court may not approve the plan unless…." Several courts have relied on this distinguishing placement to conclude that Congress did not intend for § 1325(B)(1)(A) to require the payment of interest with deferred payments to unsecured creditors. *In re Eubanks*, 581 B.R. 583 (Bankr. S.D. Ill. 2018); *In re Stewart-Harrel*, 443 B.R. 219 (Bankr. N.D. Ga. 2011); *In re Gillen*, 568 B.R. 74 (Bankr. C.D. Ill. 2017); *In re Edward*, 560 B.R. 797 (Bankr. W.D. Wash. 2016); *In re Richall*, 470 B.R. 245 (Bankr. D.N.H. 2012). These courts interpret the phrase "as of the effective date of the plan" in § 1325(b)(1) as "simply a reference to *when* the Court determines what is being paid to allowed unsecured claims, i.e., either (A) the amount of such claim, or (b) the debtor's projected disposable income in the applicable commitment period." *Eubanks,* 581 B.R. at 592 (quoting *In re Edward,* 560 B.R. at 800) (emphasis in original); *see also* 8 Collier on Bankruptcy, ¶ 1325.11[3] at 1325-57 (16th ed. 2021) ("It seems more likely that the words "as of the effective date of the plan" in subsection 1325(b) refer only to the timing of the court's analysis under that subsection.")

Conversely, courts finding that § 1325(b)(1)(A) requires the payment of interest find that the phrase, "as of the effective date of the plan – the value of property to be distributed," in § 1325(b)(1)(A) should be read the same as the phrase "the value, as of the effective date of the plan, of property to be distributed," used elsewhere in § 1325. *See, e.g, In re McKenzie,* 516 B.R.

---

be paid on such claim if the estate of the debtor were liquidated under chapter 7…on such date.");§ 1325(a)(5)(B)(ii) (with respect to each allowed secured claim… the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim);

11

Case 21-01904-jw    Doc 34    Filed 11/23/21    Entered 11/23/21 17:03:23    Desc Main
Document      Page 12 of 14

at 664; *In re Hight-Goodspeed,* 486 B.R. at 465. These courts find that Congress must have intended the phrase "as of the effective date of the plan" to modify both prongs of the section: the valuation of the distribution under subsection (A) and the disposable income alternative of (B). *McKenzie,* 516 B.R. at 663 (citing *Braswell,* 2013 WL 3270752, at *3-4); *Sampson-Pack*, 2014 WL 1320371 at *4. Specifically, "as of the effective date of the plan" indicates the payment of interest in subsection (A), while its application to subsection (B) "would mean the date on which the value and amount of projected future income should be calculated." *Id.*

This issue has also divided bankruptcy commentators, with Collier on Bankruptcy stating that § 1325(b)(1)(A) does not require the payment of interest and Lundin and Norton stating that interest is required. *Compare* 8 Collier on Bankruptcy, ¶ 1325.11[3] (16th ed. 2021) *with* 7 Norton Bankr.L. & Prac. (3d ed.), § 151:19; Keith M. Lundin, LUNDIN ON CHAPTER 13, § 91.7, at ¶ 6-7, LundinOnChapter13.com (last visited November 16, 2021).

It appears there is no published case law in the District of South Carolina addressing whether interest to general unsecured creditors is required under § 1325(b)(1) in similar circumstances. Although the Fourth Circuit has not considered this issue, it appears likely that it would agree with the reasoning of the courts who have concluded that the placement of the phrase "as of the effective date of the plan" in § 1325(b)(1) does not require the payment of interest. When answering questions of statutory interpretation, the Fourth Circuit has followed the doctrine of the last antecedent, which instructs that "a limiting clause or phrase… should ordinarily be read as modifying on the noun or phrase that it immediately follows. *In re Bateman,* 515 F.3d at 277. Applying this doctrine to § 1325(b)(1), the phrase "as of the effective date of the plan" should be read as modifying the immediately preceding phrase, "the court may not approve the plan unless" and therefore would not create a present value requirement.

After reviewing the case law on both sides of this issue and considering the Fourth Circuit's instruction on statutory interpretation and the plain language of § 1325(b)(1), the Court agrees with the reasoning of *In re Eubanks* and *In re Stewart-Harrel* and finds that the better interpretation is that § 1325(b)(1) does not require the payment of interest to unsecured creditors. If Congress had intended to require the payment of interest on allowed unsecured claims, it could have simply drafted § 1325(b)(1) to match the other subsections of § 1325 with present value requirements. The placement of the phrase "as of the effective date of the plan" prior to the word "value" should be regarded as a purposeful policy decision by Congress requiring a different interpretation than the phrase's meaning in § 1325(a)(4) and (a)(5)(B)(ii).[5]

For the reasons set forth above, the Court holds that a debtor may satisfy the requirements of § 1325(b)(1)(A) by proposing to pay allowed unsecured claims in full without interest. Under this circumstance, the debtor does not also have to meet the requirements of § 1325(b)(1)(A) by

---

[5] In *In re Gillen,* the bankruptcy court explained the policy reasons supporting the "no interest" side of the dispute as follows:

> With respect to section 1325(a)(5), the payment of interest to a secured creditor is warranted because a secured creditor has the right, under nonbankruptcy law, to immediate payment via liquidation of its collateral. Since a Chapter 13 debtor has the power to force a secured creditor to accept a stream of future payments in satisfaction of its secured claim, the payment of interest is necessary to put the secured creditor in the position it would have been in but for the bankruptcy. 8 Collier on Bankruptcy ¶ 1325.06[3][b][iii][B] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)
>
> Similarly, with respect to section 1325(a)(4), unsecured creditors with claims against a solvent Chapter 7 estate have an immediate right to payment upon liquidation of the debtor's nonexempt assets and the trustee's Chapter 5 avoidance and collection actions. The payment of interest is necessary to put the unsecured creditors in the same position they would have enjoyed in the hypothetical Chapter 7 liquidation. 8 Collier on Bankruptcy ¶ 1325.05[2][b] (sections 1325(a)(4) and (a)(5) "share the goal of compensating creditors for a delay in payments they would otherwise receive immediately").
>
> Apart from the exceptional right to interest under section 1325(a)(4), however, unsecured creditors in a Chapter 13 case have no right to an immediate payment in full at the front end of the case. The source of their payments is not a pot of assets in existence on the petition date or the date of confirmation. Rather, unsecured creditors get paid from the debtor's future income, which in Chapter 13 becomes property of the estate when received. Where there is no forced deferral of any pre-existing payment right, there is no entitlement to interest.

*In re Gillen*, 568 B.R. at 78–79.

submitting all of his projected monthly disposable income to the plan. Since Debtor's plan proposes to pay 100% of allowed unsecured claims, § 1325(b)(1)(A) is satisfied in this case. No other conditions are appropriate in this case. The Court further finds that there is no evidence that the case and the plan were not filed in good faith. Accordingly, Santiago's objection to confirmation is overruled.

        **AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**11/23/2021**



*/s/ John E. Waites*
US Bankruptcy Judge
District of South Carolina

Entered: 11/23/2021